***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 ************
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. At the time of the alleged injury by accident sustained by Plaintiff, the employee-employer relationship existed between Plaintiff Lonnie Hunt and the employer Rogosin Converters.
3. Zenith Insurance Company is the carrier on the risk.
4. The Plaintiff's average weekly wage at the time of the alleged injury was $565.46. The parties also submitted a Form 22, which was marked as Stipulated Exhibit no. 1.
5. The following medical records have been admitted into evidence as stipulated Exhibit No. 2 and consists of the following: (a) medical records of Scotland Memorial Hospital dated October 2, 1999 consisting of 5 pages; (b) medical records of Scotland Memorial Hospital dated November 19, 1999 consisting of 3 pages; (c) medical records of Scotland Memorial Hospital Physical Therapy Department consisting of 6 pages; (d) medical records of Robeson Family Practice consisting of 27 pages; (e) medical records of Dr. Malcolm Shupeck of the Pinehurst Surgical Clinic consisting of 3 pages; (f) medical records of Dr. David Allen of All Orthopaedics consisting of 2 pages; (g) medical records of Southeastern Regional Medical Center dated May 12, 2001 consisting of 3 pages; (h) medical records of Southeastern Regional Medical Center dated September 19, 2001 consisting of 87 pages; (i) medical records of Southeastern Regional Medical Center dated October 19, 2001 consisting of 2 pages; (j) medical records of Southeastern Regional Medical Center dated February 7, 2001 consisting of 2 pages; and (k) medical records of Dr. Charles Haworth of Duke Neurosurgical Associates of Lumberton consisting of 3 pages.
6. A disciplinary action dated October 1, 1999 has been marked as Defendant's Exhibit 1 and received into evidence.
7. A 1999 Absentee Calendar consisting of 2 pages has been marked as Defendant's Exhibit 2 and admitted into evidence without objection.
8. A written summary of communication regarding Plaintiff from his employer marked as Defendant's Exhibit 3 has been admitted into evidence without objection.
 ***********
Based upon all the competent evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing, Plaintiff was 35 years of age. He had completed the twelfth grade. He had no further education or vocational training. His employment history has been primarily as a mechanical electrician. Plaintiff has also run his own business as a power washer since 1991.
2. Plaintiff began his employment with Defendant-Employer in August 1998. Defendant-Employer's plant treats cording found in vehicle tires. Plaintiff's duties included checking bearings, checking rollers, unloading tankers and handling general mechanical and electrical maintenance of the equipment. Plaintiff began on third shift and later was assigned to first shift.
3. Prior to his alleged injury by accident, on May 17, 1999, Plaintiff was seen by his family physician, Dr. Kenneth E. Locklear of Robeson Family Practice Associates with complaints of mid-thoracic and bilateral forearm pain with no reports of injury. On June 29, 1999 Plaintiff reported that he was welding at home and doing a lot of heavy lifting and thought he had pulled a muscle in his back. On August 4, 1999, he complained to Dr. Locklear that he was "sore all over" and that he was stressed at work.
4. On September 28, 1999, Plaintiff had been seen again at Robeson Family Practice with complaints of persistent right foot pain. Plaintiff also complained of lower back pain radiating down his leg, in his calf and back of thigh, and reported a history of a car accident.
5. Plaintiff testified that on October 1, 1999, he was assigned to change out chains on an accumulator with a co-worker. In order to perform this change out process, Plaintiff and the co-worker tied a rope to the chain and pulled the chain up through a hole to the second floor. The chain consisted of lengths that the two men hooked together. Plaintiff described the chain as being thirty feet long and weighing approximately 500 pounds. During the change out process, Plaintiff was located on the upper floor while his co-worker fed the chains up to the Plaintiff from a lower floor. Plaintiff testified that the co-worker let go of his end of the chain, causing Plaintiff to be jerked toward the floor opening, and that he immediately felt tingling and burning sensation behind his neck across his shoulders.
6. Plaintiff continued to work the remainder of his shift on October 1. Although Plaintiff testified that he told Scott Loomis, the maintenance supervisor, about this alleged accident, Mr. Loomis testified that Plaintiff did not mention it to him. The only discussion of any injury that he had that day with Plaintiff was earlier that morning when Plaintiff mentioned that he had seen a doctor for foot problems.
7. Plaintiff likewise did not report his injury to Levern Sellers, the first shift production supervisor. Mr. Sellers testified that Plaintiff had never reported any such accident or injury to him. Plaintiff did not tell the Human Resources manager, Hilda Jackson, of the alleged accident. The employer did not learn of the alleged accident until June 2001, over a year and a half later, when Plaintiff reported that he needed surgery, and that it was related to an incident at work in October 1999.
8. Prior to October 1, 1999, Plaintiff had attendance problems. A decision had been made by management to suspend Plaintiff for a week. At the end of the shift on October 1, Mr. Loomis called Plaintiff to his office and informed him that he was being suspended for the following week based upon violation of the employer's absentee policy. Plaintiff signed the acknowledgement of the disciplinary action. Plaintiff told Mr. Loomis not to worry about it and that he would not worry about it.
9. On October 2, 1999, Plaintiff sought treatment at Scotland Memorial Hospital. He mentioned that he had been lifting heavy chains the day before and that he "woke up this a.m. with pain in back of neck." He did not report that the pain started the day before while lifting the chain as he testified at hearing.
10. Hospital staff left a message with Hilda Jackson, inquiring whether Plaintiff's injury should be considered workers' compensation. When she received the message the next week, Ms. Jackson inquired of Scott Loomis and was told that no accident had been reported to him. She then advised the hospital staff that it was not a workers' compensation claim.
11. Sometime over the weekend, Plaintiff placed a telephone call to Scott Loomis' office number and left a message that he was seeking medical treatment at Scotland Memorial Hospital due to his condition. However, he did not mention any alleged work accident.
12. Although messages had been left for both Mr. Loomis and Ms. Jackson, which indicated Plaintiff had sought medical treatment and might raise issues of an accident, Plaintiff had not reported such an accident to either individual. Although the better practice would be that both the supervisor and HR manager should have followed up with Plaintiff and asked him about the injury, the burden rested with Plaintiff to report the accident to his employer through his supervisor or the HR manager.
13. When Plaintiff returned to Scotland Memorial Hospital on November 11, 1999, he learned that his employer had advised the hospital staff that his claim was not covered by workers' compensation. However, Plaintiff never raised this issue with either Mr. Loomis or Ms. Jackson, but chose to put the visit on his medical insurance and make the co-payment. Even after that date, he made no report of the alleged accident to his employer.
14. The Full Commission does not find Plaintiff's contrary testimony that he reported this accident to Mr. Loomis on the day it allegedly happened to be credible. With regard to Plaintiff's credibility, Plaintiff denied that he had been suspended from work for a week as a disciplinary measure, on the date he was allegedly injured. Plaintiff's answers on cross-examination to such questions tended to be evasive, further indication that he was not being truthful.
15. On October 5, 1999 Plaintiff was seen at Robeson Family Practice with pain in his neck radiating into his upper back. He provided a history of hurting his back four days previously while pulling chains at work. Plaintiff was diagnosed with an upper back muscle strain and provided pain medications.
16. On October 11, 1999 Plaintiff returned to work for the Defendant-employer. From that date until January 10, 2000, Plaintiff performed the regular duties of his employment. He never complained to Mr. Loomis or Mr. Sellers about his back and did good work. Plaintiff did not seek further medical treatment for his upper back during this time.
17. On January 11, 2000, Plaintiff voluntarily resigned from his employment with Defendant-Employer. He spoke with Scott Loomis and Hilda Jackson. Plaintiff seemed reluctant to speak about his reasons for leaving. When asked by Ms. Jackson why he was leaving his employment, Plaintiff answered that he didn't believe his job should be jeopardized by taking a vacation day and that he had not felt well since coming to work for the employer. He mentioned an abscess, and no other injuries. Plaintiff's somewhat confusing testimony at hearing was that he quit his job with Rogosin Converters because he thought that the "chemicals" or the "people" at work were making him sick.
18. After leaving his employment with Rogosin Converters, Plaintiff started working on January 12, 2000 for Fowler Electric. He worked as a mechanical electrician installing receptacles in walls. Plaintiff worked there for 70 or 80 days and then resigned. Around May 26, 2000, he went to work for HW Electrical out of Greenville, South Carolina.
19. Between March 27, 2000 and May 1, 2001, Plaintiff was seen at Robeson Family Practice on eight occasions complaining of pain in his neck and shoulders. Plaintiff was referred to Dr. David R. Allen of Allen Orthopaedics of Lumberton.
20. Plaintiff was examined by Dr. Allen on August 15, 2000. Dr. Allen's examination showed good range of motion, with some tenderness along the paraspinal muscles. Plaintiff had a negative Spurling test and no radicular symptoms. Dr. Allen's preliminary assessment was that Plaintiff suffered a cervical strain with questionably radicular symptoms. An x-ray of the cervical area was normal and Dr. Allen recommended an MRI as further diagnostic studies; however, the MRI was never performed due to Plaintiff's lack of medical insurance at the time. Plaintiff did not contact Defendant-Employer to request workers' compensation coverage for his medical expenses. Dr. Allen has not seen Plaintiff since the examination of August 15, 2000.
21. By May 2001, Plaintiff had insurance coverage through his wife's health insurance. An MRI was performed at Southeastern Regional Medical Center on May 12, 2001, and revealed a protruding disk at C6-7 extending to the left with encroachment upon the thecal sac and lateral recess. There also appeared to be encroachment upon the neural foramen.
22. Plaintiff was seen at Robeson Family Practice on May 18 and again on May 29, 2001. The MRI results were available and were discussed with Plaintiff. Based upon the MRI results, Dr. Locklear referred Plaintiff to Dr. Malcolm Shupeck of the Pinehurst Surgical Clinic. It appears that this was the first time Dr. Locklear discussed possible surgery with the Plaintiff.
23. After the referral to Dr. Shupeck, Plaintiff for the first time advised Defendant-Employer that he had sustained an accident on October 1, 1999. On June 7, 2001, Plaintiff came to Hilda Jackson's office and told her that he might need surgery and that it was related to an injury he sustained on October 1, 1999, when he was lifting chains. Ms. Jackson pointed out to Plaintiff that it had been over a year and a half since then, but that she would report it to the carrier, which she then did.
24. Plaintiff was first seen by Dr. Shupeck on June 11, 2001. Plaintiff described neck pain and left arm pain, which had existed for approximately twenty-one months. Plaintiff related his symptoms to a work accident occurring on September 30, 1999. Dr. Shupeck recommended physical therapy, but also informed Plaintiff that surgery may be an option.
25. Plaintiff participated in physical therapy at Scotland Memorial Hospital on five occasions with good results. Dr. Shupeck next saw plaintiff on July 12, 2001 indicating that he had seen some improvement with physical therapy. Plaintiff was advised to return to Dr. Shupeck as needed.
26. At Plaintiff's request, he was referred to Dr. Charles Haworth of Duke Neurosurgical Associates of Lumberton. Dr. Haworth first saw plaintiff on August 17, 2001. A physical examination revealed that Plaintiff had pain radiating down the left scapula triceps and into the medium forearm. Plaintiff also was experiencing numbness and tingling in the left middle finger with decreased range of motion with regards to the neck on the left. Based upon Plaintiff's physical examination and the MRI results, Dr. Haworth recommended an anterior cervical diskectomy and fusion at C6-7.
27. On September 19, 2001 Plaintiff underwent anterior cervical diskectomy and fusion at C6-7, by Dr. Haworth. Dr. Haworth saw plaintiff in follow-up on October 19, 2001. Dr. Haworth described Plaintiff as doing extremely well with no neck or arm pain. Plaintiff's motor strength was in tact with good range of motion and good reflexes. There was no numbness or tingling noted in Plaintiff's extremities.
28. It was Dr. Haworth's opinion that after his surgery, Plaintiff would have remained temporarily totally disabled through October 19, 2001. As of October 19, 2001, Plaintiff was released to return to work with a fifteen pound lifting restriction during an eight-hour day. It was further Dr. Haworth's opinion that Plaintiff had reached maximum medical improvement by mid-December 2001 and that he was released as of December 7, 2001 with no work restrictions. Dr. Haworth assigned Plaintiff a ten percent (10%) permanent impairment rating to his back as a result of the anterior cervical diskectomy and fusion.
29. Following the release by Dr. Haworth, Plaintiff describes an average day as having limited pain in his neck with occasional numbness in his arm. Plaintiff currently takes Vioxx, Ibuprofen and Hydrocodone.
30. Dr. Haworth was unable to opine that Plaintiff's cervical injury was due to the alleged work incident when Plaintiff related that he was pulling on the chains, and was jerked on October 1, 1999. This was especially true because it had been over 2 years later before Dr. Haworth assessed Plaintiff. Plaintiff had worked for other employers in the interim, and had a power washing business. Due to the time that had passed, and the subsequent employment, causation by subsequent activity cannot be ruled out. Dr. Haworth's opinion on the causation of Plaintiff's condition is given more weight over contrary opinions regarding causation.
31. The greater weight of the evidence fails to establish that Plaintiff sustained an injury by accident to his neck and shoulders arising out of and in the course of employment as a result of being jerked by a heavy chain as he testified. The evidence is insufficient to establish that Plaintiff's protruding cervical disc, which necessitated the surgery performed by Dr. Haworth, was caused by being jerked while lifting a heavy chain.
32. Even assuming that the Plaintiff sustained the injury as described and that it could be shown to be the cause of his cervical injury, Plaintiff failed to report the accidental injury in a timely manner as required by law. Plaintiff failed to report the accident for over a year and a half, and then reported it only when it appeared that surgery would be necessary. The Defendants therefore had no opportunity to provide medical care or monitor Plaintiff's condition in the interim. The Plaintiff has failed to show reasonable excuse for his failure to report the injury by accident in a timely manner to his employer, to the prejudice of the employer.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove by the greater weight of the evidence that on or about October 1, 1999, he sustained an injury by accident to his cervical spine and shoulders arising out of and in course and scope of his employment with Rogosin Converters, Defendant-Employer as a direct result of a specific traumatic incident of work assigned by Defendant-Employer. Under the law Plaintiff's claim must be denied. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has failed to prove by the greater weight of the evidence that his cervical injury was due to a work-related injury occurring on October 1, 1999, where Plaintiff worked for subsequent employers and more than two years elapsed prior to the diagnosis. N.C. Gen. Stat. § 97-25;Click v. Pilot Freight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980).
3. Plaintiff failed to give notice of the accident to his employer, where Plaintiff gave no oral or written notice to the employer for over a year and a half. Plaintiff has failed to provide reasonable excuse for his failure to give his employer notice, to the prejudice of the Defendants. N.C. Gen. Stat. § 97-22.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Under the law, Plaintiff's claim for benefits must be and is DENIED.
2. Each side shall pay their own costs.
This the ___ day of January 2005.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_______________ LAURA K. MAVRETIC COMMISSIONER